IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PERKUMPULAN INVESTOR CRISIS CENTER DRESSEL-WBG, <br><br> Plaintiff, <br><br> v. <br><br> MINING CLAIMS LOCATED IN THE FAIRBANKS RECORDING DISTRICT, FOURTH JUDICIAL DISTRICT, STATE OF ALASKA, MORE PARTICULARLY IDENTIFIED AS MINING M 3-1 ET AL. <br><br> *in rem* Defendants, | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' ATTORNEYS' FEES** <br><br> Case No. 2:12-cv-00952-DN <br><br> District Judge David Nuffer |
| JARED SHERER and MICHELLE SHERER, <br><br> Removal Petitioners | |

This is an *in rem* case about mining claims in Alaska. Perkumpulan Investor Crisis Center Dressel-WBG (Perkumpulan) initiated an *in rem* action against mining claims in the Alaska Court on September 20, 2012.[1] Jared and Michelle Sherer (the Sherers) filed a Notice of Removal[2] pursuant to 28 U.S.C. §§ 1441 and 1446. Perkumpulan subsequently moved to remand, requesting costs and attorneys' fees.[3] On June 5, 2013, this court remanded the case to

---

[1] Alaska Civil Superior Court Case No. 4FA-12-02432CI. *See* Alaska Court Records, http://www.courtrecords.alaska.gov/eservices/?x=gZIZTfXYZUjtHPaMuKHPtg (last visited August 2, 2013).

[2] Docket no. 1, filed Oct. 11, 2012.

[3] Motion to Remand for Improper Removal and Lack of Subject Matter Jurisdiction and for Costs and Expenses, Including Attorneys' Fees (Motion to Remand), docket no. 4, filed Nov. 2, 2012.

the Alaska state court and granted Perkumpulan's request for costs and attorneys' fees.[4] Perkumpulan was ordered to file a separate motion for and proof of costs and attorney's fees and Sherers were allowed to respond.[5] On June 14, 2013, Perkumpulan filed a motion for attorney fees and proof of costs, requesting costs and attorneys' fees in the amount of $31,156.00.[6]

The Sherers, as individuals, removed this *in rem* case to this court as pro se litigants, although Michelle Sherer and her husband Donald Sherer were represented in a Washington Ponzi scheme suit by two different law offices;[7] Jared Sherer, Michelle Sherer's son, assisted Utah attorney David Turcotte in transferring a number of mining claims in question in this case;[8] Jared Sherer's affidavit displays a level of understanding and ability with the legal system;[9] Perkumpulan states that Donald Sherer, the husband of Michelle Sherer, is a disbarred attorney;[10] and Donald Sherer has been involved in the motions practice in this case, having signed the Certificate of Service attached to the Sherers' memorandum opposing the motion now before the court.[11]

---

[4] Memorandum Decision and Order to Remand for Improper Removal and Lack of Subject Matter Jurisdiction (Order Granting Fees) at 8, docket no. 17, filed June 5, 2013.

[5] *Id.*

[6] Motion and Proof of Costs and Attorneys' Fees, Pursuant to June 5, 2013 Order (DKT. NO. 17) at 3 (Motion and Proof), docket no. 19, filed June 14, 2013.

[7] [7] Memorandum in Support of Motion to Remand for Improper Removal and Lack of Subject Matter Jurisdiction and for Costs and Expenses, Including Attorneys' Fees (Memorandum in Support) at 3, docket no. 5, filed Nov. 2, 2012.

[8] *See* Affidavit of Jared Sherer in Support of Opposition to Motion to Remand, docket no. 8-1, filed Nov. 16, 2012.

[9] *Id.*

[10] Memorandum in Support at 3. The Utah State Bar website has record of a disbarred attorney named Donald R. Sherer.

[11] *See* Certificate of Service, attached as exhibit A to Opposition to Motion and Proof of Costs and Attorney Fees (Opposition to Motion), docket no. 21-1, filed July 1, 2013.

## JURISDICTION AND STANDARD

Several circuits have held that district courts retain jurisdiction over the parties for purposes of the fee award continuing after remand,[12] although the Tenth Circuit is silent. The United States Supreme Court has held that a district court may still consider collateral issues after the action is no longer pending.

> [D]istrict courts may award costs after an action is dismissed for want of jurisdiction. This court has indicated that motions for costs or attorney's fees are independent proceeding[s] supplemental to the original proceeding and not a request for a modification of the original decree. Thus, even years after the entry of a judgment on the merits a federal court could consider an award of counsel fees.[13]

This fee award is collateral to the decision to remand, and therefore this court retains jurisdiction over the parties for purposes of the fee award, separate from and continuing after the remand of this action to the Utah court.

In the June 5, 2013 order,[14] this court exercised its discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[15] The Sherers mistakenly argue several standards for deciding *whether* the court should award fees, including arguing that Perkumpulan's filing of the Alaska case already created an

---

[12] *See Bryant v. Britt*, 420 F.3d 161, 165 (2d Cir. 2005) (holding that "a district court has jurisdiction to resolve a motion for fees and costs under § 1447(c) after a remand order has issued"); *Wisconsin v. Hotline Indus.*, Inc., 236 F.3d 363, 365–68 (7th Cir. 2000) (holding that a district court retains jurisdiction to consider collateral matters after remand, and attorneys' fees may be awarded under a separate order, even when remand is based on the defendant's voluntary stipulation); *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 255–57 (6th Cir. 1997) (holding that a district court may make an award of attorney's fees and costs in a separate order after issuing a remand order); *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996) (holding that district courts have broad discretion in fee awards under 28 U.S.C. § 1447(c)); and *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 448 (9th Cir. 1992) (district court retains jurisdiction to award fees after remand).

[13] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–96 (1990) (internal quotations and citations omitted) (upholding Rule 11 sanctions imposed after the plaintiff voluntarily dismissed the action).

[14] Order Granting Fees at 8.

[15] 28 U.S.C. § 1447(c).

unreasonable financial burden[16] and that the removal was made in good faith.[17] These arguments ignore the previous order already granting the attorney fees. The proper question in this motion is not *whether* to award attorney fees, but what *amount* of fees to award.

## ANALYSIS

To assess fees, the Tenth Circuit applies the Lodestar test.[18] "The lodestar, of course, is the 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances."[19] The court first considers whether the number of hours billed was reasonable, then whether the billed rates were reasonable, and finally whether there are rare and special circumstances present that would suggest an adjustment of the fee to be awarded. As evidence of the hours and rates billed, Perkumpulan has submitted declarations and supporting documents from Douglas Gross of Hofheimer Gartlir & Gross in New York City [20] and Peter Donaldson of Durham Jones & Pinegar in Salt Lake City.[21]

First, Perkumpulan claims 71.5 attorney hours were "reasonably expended . . . opposing the Sherers' improper removal of this case,"[22] and Perkumpulan incurred $5,320.00 in additional

---

[16] Opposition to Motion at 2.

[17] *Id.* at 1–3.

[18] *In re Miniscribe Corp.*, 309 F.3d 1234, 1243 (10th Cir. 2002) ("We conclude that the lodestar test . . . is the appropriate method of calculation.").

[19] *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Exkerhart*, 461 U.S. 424, 433 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 130 S.Ct. 1662, 1672–73 (2010)).

[20] Declaration of Douglass Gross in Support of Plaintiff's Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c) (Gross Declaration), docket no. 19-2, filed June 14, 2013.

[21] Declaration of Peter Donaldson in Support of Plaintiff's Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c) (Donaldson Declaration), docket no. 19-3, filed June 14, 2013.

[22] Motion and Proof at 3 (citing Gross Declaration ¶¶ 9–12 and Donaldson Declaration ¶¶ 8–9).

4

fees "for the preparation and filing of this motion for attorneys fees and costs and related exhibits."[23] The distribution of costs and fees is as follows:

**Motion Practice (Not including Fee Petition):**

| | | |
|---|---|---|
| Hofheimer Gartlir & Gross, LLP | $ | 22,745.00 |
| Durham Jones & Pinegar, P.C. | $ | 3,091.00 |
| Total | $ | 25,836.00 |

**Fee Petition to Date:**

| | | | | |
|---|---|---|---|---|
| Hofheimer Gartlir & Gross, LLP | $ | 4,825.00 | | |
| Durham Jones & Pinegar, P.C. | $ | 495.00 | | |
| Total | $ | 5,320.00 | $ | 31,156.00[24] |

The Sherers describe the billing as an "absurd amount"[25] and object to the inclusion of fees billed for investigation of documents concerning attorney Dwight Williams, a defendant in the parties' Washington RICO case, and Will Barrowes, an accountant.[26] However, Perkumpulan responds that this time has not been factored into the fees to be charged to the Sherers.[27] Perkumpulan states that it included "all its time entries for the day related to the Dressel matter, but only charged the Sherers with responsibility for those related to the improper removal,"[28] and the line items pertaining to Williams and Barrowes were "only included in Plaintiff's submission because it was billed on the same day as billings related to the improper

---

[23] *Id.* (citing Gross Declaration ¶ 13 and Donaldson Declaration ¶ 11).

[24] Declaration of Douglass Gross at 4 ¶ 8; Declaration of Peter Donaldson at 3 ¶ 7.

[25] Opposition to Motion at 1.

[26] *Id.* at 2–3.

[27] Reply in Support of Plaintiff's Motion for Attorneys' Fees (Reply in Support) at 1, docket no. 24, filed July 12, 2013.

[28] *Id.*

5

removal."[29] Therefore, there is nothing objectionable in the activities billed by Perkumpulan's attorneys[30] and the hours billed are reasonable.

Second, in relation to the reasonableness of the rates billed, Perkumpulan argues that "[t]he hourly rates billed by Plaintiff's counsel were appropriate given counsel's education, experience and location."[31] Perkumpulan states that its counsel's hourly rates are "fair and reasonable" "[a]s compared to comparable attorneys [sic] engaging in nationwide litigation (here spanning the States of Washington, Utah and Alaska), . . . especially when compared to the rate charged by large, national law firms, and they are also within the range charged by attorneys in Salt Lake City."[32] The Sherers do not dispute the rates at which Perkumpulan's attorneys billed. They are reasonable for the reasons stated.

As correctly stated by Perkumpulan, "the Sherers have not presented any substantive criticisms regarding the veracity, relevance or reasonableness of Plaintiff's attorneys' fees time entries,"[33] and therefore the billed amount of $31,156.00 is the reasonable cost of remanding this case back to Alaska.

Therefore, the court addresses the final point, whether sufficient special circumstances are present to merit an adjustment of the fee award. The Sherers make two arguments for a reduction: first, the legal issues were simple so the billing is excessive; and second, the Sherer family is below the poverty line and incapable of paying these fees.[34]

---

[29] *Id.*

[30] *See* Hofheimer Gartlir & Gross, LLP Timekeeper History, docket no. 19-2-B, filed June 14, 2013; Durham Jones & Pinegar Time Report, docket no. 19-3-B, filed June 14, 2013.

[31] Motion and Proof at 3.

[32] *Id.* (citing Gross Declaration ¶¶ 5, 9 and Donaldson Declaration ¶ 10).

[33] Reply in Support at 1.

[34] Opposition to Motion at 3–4.

To support both claims for a reduction, the Sherers cite the Tenth Circuit decision in *Twilly v. Integris Baptist Medical Center*.[35] In *Twilly*, the district court reduced a fee award from $52,796 to $20,000 after granting summary judgment to the defendant employer in a wrongful termination case because

> the total number of hours billed by defendant's counsel was excessive given that the legal and factual issues were not complex and the litigation was decided at the summary judgment stage. The court also took into consideration plaintiff's financial resources and the fact that he suffers from a life-threatening illness.[36]

The Tenth Circuit found that the district court had not abused its discretion in awarding attorney fees and affirmed.[37]

In relation to the nature of the litigation, the Sherers argue that "[h]ere, the legal concept is simple."[38] Perkumpulan responds that "the Sherers raised multiple complex arguments in support of their removal which Plaintiff's counsel were required to address in three separate briefs."[39] It is true that the legal concept was simple, but the Sherers chose to pursue their removal, filing lengthy briefs raising several complex arguments.

Additionally, it was nearly six months after removal that the Sherers moved to withdraw the removal "after considering and researching the arguments set forth by Plaintiff in its opposition,"[40] and also after discussing with their attorneys the necessity of disposing of the removal for the benefit of the Alaska case (which continued regardless of the Sherers' filings in

---

[35] 16 Fed App'x 923 (10th Cir. 2001).

[36] *Id.* at 926 (internal citation omitted).

[37] *Id.*

[38] Opposition to Motion at 3.

[39] Reply in Support at 1.

[40] Withdrawal of Removal of Action, docket no. 14, filed Mar. 19, 2013.

this court).⁴¹ Perkumpulan offered evidence that the removal was done in bad faith to block or bog down the Alaska case.⁴² Likewise, Perkumpulan states that

> the Sherers have elected to engage in a campaign of frivolous motion practice in an effort to bog down Plaintiff's counsel and stave off the trial in the RICO litigation.⁴³ . . . The Sherers have filed no less than five frivolous motions in this ongoing campaign. The improper removal of this case is part and parcel of that abusive campaign.⁴⁴

Because of the Sherers' complex and lengthy motion practice, Perkumpulan argues they should not receive any leniency from this Court regarding a fee reduction.

In relation to their financial hardships, the Sherers make several health-based arguments. According to Jared Sherer, his only income is disability payments from the Veterans Administration which has determined him to be 100% disabled, and he supports his seven children and his wife who neither works nor speaks English.⁴⁵ Jared Sherer also states that his mother, Michelle Sherer, cares for her mother-in-law with dementia on a full-time basis.⁴⁶ Jared Sherer also states that his father does not work and is also 100% disabled according to the Veterans Administration.⁴⁷ The Sherers also stated before the case was remanded that "if required to litigate in Alaska, they would have no choice but to file bankruptcy."⁴⁸

---

⁴¹ *See* Order Granting Fees at 5–6.

⁴² *See* Partial Objection to "Withdrawal of Removal of Action" at 1–2, docket no. 15, filed Mar. 20, 2013; Jason Weiner letter, docket no. 15-1, filed Mar. 20, 2013.

⁴³ *Perkumpulan Investor Crisis Center Dressel – WBG v. Wong*, Case No. 2:09-cv-1786-JCC (W.D. Washington).

⁴⁴ Reply in Support at 2 (citations omitted).

⁴⁵ Declaration of Jared Sherer ¶ 1, docket no. 21-1, filed July 1, 2013.

⁴⁶ *Id.* ¶ 2.

⁴⁷ *Id.* ¶ 3.

⁴⁸ Opposition to Motion at 3.

The Sherers offer no evidence of a lack of money in bank accounts or other assets, only stating that they are "below the poverty line" given their income.[49] Given their involvement in an *in rem* case for Alaskan gold mines, it is likely they have assets they have not discussed.

Perkumpulan denies the Sherers' claim of poverty, arguing that they have great wealth that was acquired through stolen funds.

> [T]he Sherers (principally Donald and Michelle Sherer) helped run a massive international Ponzi Scheme which defrauded thousands of investors out of their life savings The Sherers then used the money they stole to live extravagantly -- purchasing helicopters and houses with investors' funds. Audaciously, the Sherers' now claim that they are living "below the poverty level." This claim is also impossible to square with the hundreds of thousands of dollars or real estate currently held by the Sherers. No proof is provided of this alleged poverty. Moreover, this contention is difficult to believe based upon the millions stolen by the Sherers.[50]

Perkumpulan also states that "[e]ven if this claim of poverty were true, it would only mean that the Sherers squandered millions of dollars in stolen investor funds. The Sherers should not be rewarded with leniency if that is the case."[51]

Given the arguments of both parties, the court finds that the requested fee award of $31,156.00 should not be reduced.

---

[49] *Id.* at 4.

[50] Reply in Support at 2 (citations omitted).

[51] *Id.*

**ORDER**

IT IS HEREBY ORDERED that Perkumpulan's Motion and Proof of Costs and Attorney's Fees[52] is GRANTED and Perkumplan is awarded $31,156.00.

Signed August 6, 2013.

BY THE COURT

_____
District Judge David Nuffer

---

[52] Docket no. 19, filed June 6, 2013.