IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PERKUMPULAN INVESTOR CRISIS CENTER DRESSEL WBG,<br><br>                    Plaintiff,<br>v.<br><br>JARED SHERER and MICHELLE SHERER,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR ATTORNEY FEES AND DENYING MOTION TO RECONSIDER FEE AWARD**<br><br>Case No.  2:12-cv-952 DN<br><br>District Judge David Nuffer |

Originally filed as an *in rem* action in Alaska state court, this case was removed[1] to the District of Utah by defendants Michelle and Jared Sherer ("the Sherers"), a mother and son. Plaintiff Perkumpulan Investor Crisis Center Dressel WBG ("Perkumpulan") filed a motion to remand, requesting costs and attorneys' fees.[2] Because the removal was improper, the case was remanded to Alaskan state court.[3] After additional briefing, plaintiff's attorneys' fees were granted in the amount of $31,156.00.[4] Subsequent to the remand, the Sherers filed motions to disqualify the judge[5] and vacate the fee award.[6] In the order denying those motions,

---

[1] Docket no. 1, filed October 11, 2012.

[2] Docket no. 4, filed November 2, 2012.

[3] Memorandum Decision and Order to Remand for Improper Removal and Lack of Subject Matter Jurisdiction, docket no. 17, filed June 5, 2013 ("Order to Remand").

[4] Memorandum Decision and Order Granting Plaintiffs' Attorneys' Fees, docket no. 26, filed August 6, 2013 ("Order Granting Fees").

[5] Motion to Disqualify Judge David Nuffer, docket no. 30, filed April 4, 2014 ("Motion to Disqualify").

[6] Motion to Vacate Order of Attorney Fees Issued by Judge David Nuffer Pursuant to Rule 60(b) on Grounds that Plaintiff's Counsel Committed Fraud upon the Court, docket no. 29, filed April 4, 2014 ("Motion to Vacate").

Perkumpulan's second request for fee award was granted.[7]  On March 5, 2015, Perkumpulan

filed the motion for the second fee award.[8] On March 12, 2015, the Sherers filed an opposition to

that motion[9] and a motion to reconsider the denial of the motion to vacate the initial fee award.[10]

# TABLE OF CONTENTS

Perkumpulan's Motion for and Proof of Fees ................................................................................ 3
    I.      Jurisdiction and Standard ............................................................................... 3
    II.     Perkumpulan's Fee Award is Proper ............................................................... 3
         A.      The number of hours billed was reasonable ................................... 4
         B.      The billed rates were reasonable ................................................... 6
         C.      There are no rare and special circumstances sufficient to merit an
                adjustment .................................................................................... 7
         D.      The Sherers' other arguments in opposition ............................... 13
    III.    Conclusion on the Second Fee Award Motion ............................................... 18
The Sherer's Motion for Reconsideration of the Order denying the motion to vacate the award of
    attorneys' fees .......................................................................................................... 18
    I.      Standard ...................................................................................................... 18
    II.     There is no Basis to Amend the Order Denying the Motion to Vacate the Award
         of Attorneys' Fees ....................................................................................... 19
         A.      The removal was improper, regardless of intent ......................... 19
         B.      The underlying awards of attorneys' fees are proper, not harsh .............. 20
         C.      The Sherers' "newly discovered evidence" is irrelevant to the procedure of
                remand ........................................................................................ 22
    III.    Conclusion on the Sherers' Motion for Reconsideration ...................................... 22
ORDER ...................................................................................................................... 23

---

[7] Amended Memorandum Decision and Order Denying Motions to Disqualify, to Vacate Fee Award, and for Rule 11 Sanctions; Granting Request for Fee Award, at 15, docket no. 43, filed Feb. 19, 2015 ("Order Denying Motion to Vacate Fees").

[8] Motion and Proof of Costs and Attorneys' Fees, Pursuant to February 19, 2015 Order (DKT. NO 43), docket no. 44, filed Mar. 5, 2015 ("Perkumpulan's Second Fee Award Motion").

[9] Opposition to Perkumpulan's Motion for Additional Attorney Fees Pursuant to February 19, 2015 Order (DKT. NO 43), docket no. 45, filed Mar. 12, 2015 (Opposition to the Second Fee Award).

[10] Motion for Reconsideration of Rule 60, docket no. 46, filed Mar. 12, 2015 ("Motion for Reconsideration").

**PERKUMPULAN'S MOTION FOR AND PROOF OF FEES**

## I.      Jurisdiction and Standard

Courts have discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal,"[11] and several circuits have held that district courts retain jurisdiction over the parties for purposes of the fee award continuing after remand.[12] This fee award is collateral to the remand, and therefore, jurisdiction over the parties remains for the fee awards, separate from and continuing after the remand.

## II.      Perkumpulan's Fee Award is Proper

It has already been determined that the Sherers' removal of this case from Alaska state court was not only improper,[13] but "clearly improper,"[14] wholly lacking "an objectively reasonable basis."[15] It has also already been determined that because Perkumpulan is entitled to attorneys' fees "incurred as a result of the removal,"[16] and because the additional delay, cost, and waste the Sherers' filings create is only "incurred as a result of the removal," Perkumpulan is entitled to an fees for opposing the Sherers' post-remand filings.[17] Therefore, this order determines the proper amount of Perkumpulan's fees.

---

[11] 28 U.S.C. § 1447(c).

[12] *See Bryant v. Britt*, 420 F.3d 161, 165 (2d Cir. 2005) (holding that "a district court has jurisdiction to resolve a motion for fees and costs under § 1447(c) after a remand order has issued"); *Wisconsin v. Hotline Indus.*, Inc., 236 F.3d 363, 365–68 (7th Cir. 2000) (holding that a district court retains jurisdiction to consider collateral matters after remand, and attorneys' fees may be awarded under a separate order, even when remand is based on the defendant's voluntary stipulation); *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 255–57 (6th Cir. 1997) (holding that a district court may make an award of attorney's fees and costs in a separate order after issuing a remand order); *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996) (holding that district courts have broad discretion in fee awards under 28 U.S.C. § 1447(c)); and *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443, 448 (9th Cir. 1992) (district court retains jurisdiction to award fees after remand).

[13] Order to Remand at 9.

[14] *Id.* at 3.

[15] *Id.* at 6.

[16] 28 U.S.C. § 1447(c).

[17] Order Denying Motion to Vacate Fees at 16.

The Tenth Circuit applies the Lodestar test to calculate an award of attorney fees.[18] "The lodestar . . . is the 'the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate,' which produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances."[19] "The court determines reasonable hourly rates based on evidence of what the market commands for . . . analogous litigation and the prevailing market rate in the relevant community."[20] The court first considers whether the number of hours billed was reasonable, then whether the billed rates were reasonable, and finally whether rare and special circumstances exist suggesting an adjustment of the fee to be awarded.

### A. The number of hours billed was reasonable

The first step in the Lodestar analysis is to consider whether the number of hours billed was reasonable. Perkumpulan submitted declarations of counsel Douglas Gross[21] and Peter Donaldson,[22] reflecting the attorney work performed related to the Sherers' improper motions, the Rule 11 motions, and the preparation of the Second Fee Award Motion. Perkumpulan's counsel reasonably expended 62.5 attorney hours opposing the Sherers' improper motions,[23] 39.1 hours preparing the Rule 11 motions, and 6.8 hours preparing Perkumpulan's Second Fee Award Motion. Perkumpulan's request for attorney fees was granted for the opposition to the

---

[18] *In re Miniscribe Corp.*, 309 F.3d 1234, 1243 (10th Cir. 2002) ("We conclude that the lodestar test . . . is the appropriate method of calculation.").

[19] *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.*, 616 F.3d 1098, 1102 (10th Cir. 2010) (quoting *Hensley v. Exkerhart*, 461 U.S. 424, 433 (1983); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551–54 (2010)).

[20] *EarthGrains Baking Companies, Inc. v. Sycamore Family Bakery Inc.*, No. 2:09CV523DAK, 2012 WL 6553739, at *1 (D. Utah Dec. 14, 2012) (citations and quotations omitted).

[21] Declaration of Douglas Gross in Support of Plaintiff's Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c), attached as Exhibit 1 to Perkumpulan's Second Fee Award Motion, docket no. 44-1, filed Mar. 5, 2015 ("Declaration of Douglas Gross").

[22] Declaration of Peter Donaldson in Support of Plaintiff's Motion for Attorneys' Fees Pursuant to 28 U.S.C. § 1447(c), filed as Exhibit 1 to Perkumpulan's Second Fee Award Motion, docket no. 44-1, filed Mar. 5, 2015.

[23] Perkumpulan's Second Fee Award Motion at 2.

Sherers' motions, not the Rule 11 motions,[24] so time spent on the Rule 11 motions will not be calculated.

In total, the distribution of costs and fees is as follows:

Motion Practice (Not including Fee Petition or Rule 11 Motions):

| | | |
|---|---|---|
| Hofheimer Gartlir & Gross, LLP | $ | 18,955.00 |
| Durham Jones & Pinegar, P .C. | $ | 962.50 |
| Total | $ | 19,917.50 |

Perkumpulan's Second Fee Award Motion:

| | | |
|---|---|---|
| Goetz Fitzpatrick for Hofheimer[25] | $ | 2,160.00 |
| Durham Jones & Pinegar, P.C. | $ | 550.00 |
| Total | $ | 2,710.00 |
| Combined Total | $ | 22,627.50[26] |

The Sherers objected to the amount of time billed, stating that the "legal billings are fraught with non-related and/or superfluous costs. Perkumpulan counsel passed this around, each counsel adding unnecessary and extremely costly billing."[27] This is the entirety of the Sherers' opposition to the amount of hours billed. They cite nothing from the declarations, nor do they specify what they conclude to be "non-related," "superfluous," or "unnecessary."

Additionally, in the briefing on the initial fee award, the Sherers cited Tenth Circuit authority on the importance of the complexity of the legal issues,[28] arguing that "[h]ere, the legal

---

[24] *See* Order Denying Motion to Vacate Fees at 15–16.

[25] The prior law firm of Mr. Gross, Hofheimer Gartlir & Gross, LLP, dissolved as of August 1, 2014. Mr. Gross performed the work on the Second Fee Award Motion at his new law firm, Goetz Fitzpatrick LLP. *See* Second Fee Award Motion at 3.

[26] Declaration of Douglas Gross, 7; Declaration of Peter Donaldson, ¶ 10.

[27] Opposition to the Second Fee Award at 3.

[28] *Twilly v. Integris Baptist Medical Center*, 16 Fed App'x 923, 926 (10th Cir. 2001) (internal citations omitted).

concept is simple."[29] The court responded by noting that "[i]t is true that the legal concept was simple, but the Sherers chose to pursue their removal, filing lengthy briefs raising several complex arguments."[30] Here, even if the Sherers had done more to argue that the hours billed were unnecessary, the same response would likely remain: the Sherers have overcomplicated an otherwise simple procedure with multiple lengthy and convoluted filings. Furthermore, Donald Sherer, a disbarred attorney who has not denied improper representation his wife and son, the defendants, has admitted that this is a complex case: "[i]t takes me literally hundreds of hours to research and draft documents."[31]

Perkumpulan's counsel has offered evidence documenting the time spent and how it was spent, with nothing but conclusory opposition from the Sherers, and therefore, the number of hours billed is reasonable.

**B.  The billed rates were reasonable**

The second step in the Lodestar analysis is to consider whether the billed rates were reasonable. Perkumpulan's counsel support the reasonableness of their billed rates:

> Douglas Gross was a partner of Hofheimer with over thirty years of experience. His billing rate on this case was $450 an hour, which was a rate more than 25% reduced from his standard rate in 2014 of $610 an hour. Ofer Reger and Gary Smith were both associates with over five years of experience, and were billed at $275 an hour.[32]

> Peter Donaldson is a shareholder of DJP with over ten years of experience. His billing rate on this case was $275 an hour. This rate is reasonable for an attorney of Mr. Donaldson's experience.
> . . . .

---

[29] Opposition to Motion at 3.

[30] Order Granting Fees at 7.

[31] *Id.*

[32] Declaration of Douglas Gross ¶ 8.

The rates of the Hofheimer attorneys, as described in the Declaration of Douglas Gross, are reasonable and are within the normal range charged by Salt Lake City attorneys.[33]

The Sherers objected to these billing rates, stating that "[t]he hourly charges are extremely unreasonable, and do not meet the local standard."[34] Interestingly, the Sherers did not argue that Perkumpulan's counsel's rates were unreasonable during the briefing on the initial fee award. And now they cite no evidence of the local standards.

Because the rates meet the local standard, because Perkumpulan has offered evidence of the underlying reasoning for these rates, and because the Sherers have not refuted these rates with any evidence, the rates are found to be reasonable.

## C.  There are no rare and special circumstances sufficient to merit an adjustment

The third and final step in the Lodestar analysis is to consider whether there are rare and special circumstances present that would be sufficient to merit an adjustment of the fee to be awarded. In their opposition, the Sherers only include one sentence relevant to this factor: "Defendants are impecunious, Jared Sherer is 100% disabled from combat service, Michelle Sherer's husband is 100% disabled from combat service."[35] Additionally, the opposition incorporates affidavits of Jared Sherer[36] and Donald Sherer[37] which were attached to the Sherers' motion to reconsider the court's ruling upholding the initial fee award. The filings the Sherers incorporate into their opposition focus generally on two arguments why an adjustment in the amount of fees is warranted: (1) disability and an inability to work, and (2) financial hardship. As

---

[33] Declaration of Peter Donaldson ¶ 8.

[34] Opposition to the Second Fee Award at 3.

[35] *Id.* at 5.

[36] Affidavit of Jared Sherer In Support of Motion Opposing Award of Attorney Fees ("Affidavit of Jared Sherer"), attached as Exhibit G to Motion to Reconsider Rule 60, docket no. 46-4, filed Mar. 12, 2015.

[37] Affidavit of Donald Sherer In Support of Motion Opposing Award of Attorney Fees and Motion for Reconsideration of Rule 60 Motion ("Affidavit of Donald Sherer"), attached as Exhibit F to Motion to Reconsider Rule 60, docket no. 46-3, filed Mar. 12, 2015.

described below, these arguments do not rise to the level of rare and special circumstances required to merit an adjustment of the fee award.

Notably, Donald Sherer is not a named party in this case, and his level of involvement as disbarred legal counsel and self-presumed party remains suspect. Accordingly, his income and disability cannot factor heavily into the consideration of an adjustment of the fee award.

(1)     Disability and the Inability to Work

Jared Sherer, the only named party to file an affidavit, states that he is "100% disabled from military service in Iraq," and his "only income is disability from the V.A."[38] He states that he been unemployed years and receives psychological and emotional counseling "from the V.A. on a regular basis,"[39] was "exposed to chemicals in Iraq" and has "lung related issues."[40]

Michelle Sherer, the only other named party, did not submit an affidavit.

Donald Sherer states that his "wife Michelle Sherer was taking care of [his] mother full time," although she "is now in a convalescent center."[41] He further states that Michelle Sherer is not employed, cares for Donald Sherer, and recently underwent four surgeries.[42]

Non-party Donald Sherer states that his only income is "100% disability from the Veteran's Administration."[43] He states and documents that he has "recently been determined to be 'house bound' by the V.A. due to heart damage" and "has been diagnosed with combat PTSD and several Agent Orange diseases, namely coronary artery disease and Type II Diabetes."[44]

---

[38] Affidavit of Jared Sherer ¶ 1.

[39] *Id.* ¶ 2.

[40] *Id.* ¶ 2.

[41] Affidavit of Donald Sherer ¶ 3.

[42] *Id.* ¶ 3.

[43] *Id.* ¶ 2.

[44] *Id.* ¶ 2.

Although disability and other circumstance may prevent the Sherers from earning as much as before, they have exhibited ability to pursue their own interests over the course of their many filings. They have "spent hundreds of hours" investigating and developing a case against Dressel,[45] showing that they are capable of overcoming these burdens to suit their own interests. They cannot raise disability as a shield from the consequences of their own actions where those actions prove capability.

(2)     Financial hardship

Jason Sherer states that he has no savings and does not own any stocks, bonds, or other assets.[46] He states that he has had to refinance several times a home that was originally purchased with a zero-down veteran's loan.[47] He states that this wife recently left for Brazil and that it is possible she will not return, leaving him to provide sole care to eight children.[48] He states that he and his parents "spent hundreds of hours" and "a lot of time and money investigating Dressel,"[49] assisting Utah attorneys David Turcotte and Brennan Moss develop a case against it, services for which were never reimbursed.[50] He states that he borrowed $100,000 to invest with those attorneys and was never repaid.[51] He attached several credit union, credit card, and loan statements showing multiple thousands of dollars of debt.[52]

Michelle Sherer, as stated above, did not file an affidavit or any documentation. Donald Sherer seeks to take her place in the case. He states that "[w]e have no savings or any other

---

[45] Affidavit of Jared Sherer ¶ 8; s*ee also* Affidavit of Donald Sherer ¶ 5.

[46] Affidavit of Jared Sherer ¶ 5.

[47] *Id.* ¶ 10.

[48] *Id.* ¶ 10.

[49] *Id.* ¶¶ 11–12.

[50] *Id.* ¶ 8.

[51] *Id.* ¶ 9.

[52] *See* financial statements, attached to Affidavit of Jared Sherer, docket no. 46-4, filed Mar. 12, 2015.

9

assets except three lots in Wrangell, Alaska."[53] Like Jason Sherer, Donald Sherer states that

"[w]e spent a lot of time and money attempting to discover the true nature of Dressel

holdings/investments in Asia."[54] He echoes Jason Sherer's claim that Utah attorneys promised

compensation for expenditures made to investigate Dressel, but never paid,[55] and he outlines

some of the work performed on their behalf on property at Wrangell and Candle, Alaska.[56] He

states that he has spent "many thousands of dollars" and with his family, has conducted

"hundreds of hours in labor," and is "trying to recover some of [his] expenses" which "have

created much debt which is not resolved."[57]

      Donald Sherer also attached a bank account summary, loan statements, and credit card

summaries.[58] Several pieces are noteworthy. First, Michelle Sherer's name only appears on one

credit card summary with an outstanding balance of $841.37.[59] The remaining documentation

refers to non-party Donald Sherer's only, with at least one credit union statement not identifying

a name at all. Although he notes that his only assets are land in Wrangell, Alaska,[60] his own

documentation shows loans in his name for a home in Hurricane, Utah and a luxury vehicle.[61]

The Cadillac Escalade has a healthy amount of equity in it based on the balance remaining on the

auto loan,[62] and the residence was previously described by Dressel attorney Dwight Williams as

---

[53] Affidavit of Donald Sherer ¶ 3.

[54] *Id.* ¶ 5.

[55] *Id.* ¶ 6.

[56] *Id.* ¶ 10.

[57] *Id.* ¶ 10.

[58] *See* financial statements, attached to Affidavit of Donald Sherer, docket no. 46-3, filed Mar. 12, 2015.

[59] *See* Capital One Visa Summary, attached to Affidavit of Donald Sherer, docket no. 46-3, filed Mar. 12, 2015.

[60] Affidavit of Donald Sherer ¶ 3.

[61] *See* Cyprus Credit Union Account Summary and CNG Financial Loan Statement, attached to Affidavit of Donald Sherer, docket no. 46-3, filed Mar. 12, 2015.

[62] *See* Cyprus Credit Union Account Summary, attached to Affidavit of Donald Sherer, docket no. 46-3, filed Mar. 12, 2015.

a "luxury single family home near a golf course" that Donald Sherer allegedly confessed to purchasing with Dressel funds.[63]

The Sherers took issue with the reference to Mr. Williams's financial statement[64] and report[65] in the Order Denying Motion to Vacate Fees.[66] Mr. Williams concluded "that the Sherers stole millions of dollars of investor funds through the Dressel Ponzi Scheme.[67] Donald Sherer attacked the credibility of Mr. Williams in his own affidavit,[68] an affidavit by paralegal Robert Jinks,[69] and an affidavit of former Dressel bookkeeper, Kelly Thacker.[70] According to Perkumpulan and their submitted affidavits, the Sherers cannot be trusted, and according to the Sherers and their submitted affidavits, Perkumpulan's exhibits cannot be trusted. At best, these competing allegations of dishonesty diminish the reliability of both parties' filings. The Order Denying Motion to Vacate Fees was not based on Mr. Williams's affidavit. Rather, the order referred to the affidavit as an indication that there is a larger financial picture than what is before the court. The Sherers' filings prove that by revealing a previously un-disclosed asset in a luxury

---

[63] Report on Critical Historical Facts Surrounding Performance of Don Sherer, "Director in Charge" of Dressel Investment Ltd. (BVI) Through June, 2005 and Aftermath at 7, attached as Exhibit H to Plaintiff's Memorandum in Opposition to Motion to Disqualify Judge David Nuffer, docket no. 34-8, filed May 5, 2014.

[64] Dressel Investment Limited, Inc. Financial Statements, attached as Exhibit G, docket no. 34-7, filed May 5, 2014.

[65] Report on Critical Historical Facts Surrounding Performance of Don Sherer, "Director in Charge" of Dressel Investment Ltd. (BVI) Through June, 2005 and Aftermath, attached as Exhibit H to Plaintiff's Memorandum in Opposition to Motion to Disqualify Judge David Nuffer, docket no. 34-8, filed May 5, 2014.

[66] Affidavit of Donald Sherer ¶ 1.

[67] Memorandum in Opposition to Motion to Disqualify Judge David Nuffer and Request for Costs and Expenses, Including Attorneys' Fees at 9, docket no. 33, filed May 5, 2014.

[68] Affidavit of Donald Sherer ¶¶ 1, 5.

[69] See Sworn Affidavit & Testimony of Robert W. Jinks, attached as Exhibit C to Motion to Reconsider, docket no. 46-1, filed Mar. 12, 2015.

[70] See Affidavit of Kelley Thacker in Support of Motion Opposing Award of Attorney Fees, attached as Exhibit D to Motion to Reconsider, docket no. 46-2, filed Mar. 12, 2015.

vehicle. However, even if Mr. Williams's financial statement[71] and report[72] are disregarded entirely, the Sherers must still show rare and special circumstances to adjust the fee award.

As to the land in Alaska, Donald Sherer complains that "[t]he court misconstrues the value of these lots, and what we paid for them."[73] In its Order Denying Motion to Vacate Fees, the court quoted Michelle Sherer:

> Furthermore, the Sherers attached an exhibit to their present motion to disqualify that suggests the opposite of their alleged poverty. In her declaration, Michelle Sherer states that she and husband Donald Sherer purchased "several [contiguous] lots on Wrangell Island, Alaska" for $450,000 in total, having only sold two of the five lots described.[74]

There is no comment on the present value of the lots, and purchase price is merely a computation of Michelle Sherers' stated amount of five lots at $50,000 apiece. Additionally, Donald Sherer argues that he out-leveraged the lots, and the "rapid deterioration in [his] health has complicated matters" regarding the improvement and sale of the lots.[75]

Regardless of the complaints about the prior discussion of the Sherers' assets, the point remains that they have assets yet to be liquidated, including landholdings in Alaska and residence in Hurricane, as well as a luxury vehicle. In the briefing on the initial fee award, none of these assets were discussed, and the Cadillac Escalade was only revealed in the Sherers' debt documentation, but never discussed. Furthermore, the Sherers have not shown the source of the money used to service all of their debts. Given the evolving picture of assets and the lack of income information, it becomes difficult to formulate a reliable financial picture. That said, their

---

[71] Dressel Investment Limited, Inc. Financial Statements, attached as Exhibit G, docket no. 34-7, filed May 5, 2014.

[72] Report on Critical Historical Facts Surrounding Performance of Don Sherer, "Director in Charge" of Dressel Investment Ltd. (BVI) Through June, 2005 and Aftermath, attached as Exhibit H to Plaintiff's Memorandum in Opposition to Motion to Disqualify Judge David Nuffer, docket no. 34-8, filed May 5, 2014.

[73] Affidavit of Donald Sherer ¶ 4.

[74] Order Denying Motion to Vacate Fees at 9 (quoting Affidavit of Michelle Sherer in Support of Summary Judgment Motion, attached as Exhibit E to Motion to Disqualify, docket no. 30-4, filed April 4, 2014).

[75] Affidavit of Donald Sherer ¶ 4.

debts are not so extraordinary as to relieve them of the consequence of the legal costs they have imposed by their improper removal and over-extensive filings. As Perkumpulan states in the reply on the Second Fee Award Motion, "Defendants' alleged poverty is no excuse for misconduct. Nor does a haphazard presentation of financial records prove poverty. . . . Alleged poverty does not give the Sherers license to engage in improper litigation tactics without consequences."[76]

### D.  The Sherers' other arguments in opposition

In the briefing on the initial fee award, The Sherers mistakenly argued several standards for deciding whether fees should be awarded, including arguing that Perkumpulan's filing of the Alaska case already created an unreasonable financial burden and that the removal was made in good faith.[77] Those arguments "ignore[d] the previous order already granting the attorney fees. The proper question in [the initial fee award] motion is not whether to award attorney fees, but what amount of fees to award."[78]

Similarly, in the briefing on their motion to disqualify the judge, the Sherers took issue with an alleged lack of consideration for what were irrelevant arguments.[79] In the briefing on their motion to vacate the initial fee award, the Sherers failed to make an argument relevant to the fee award, making several irrelevant arguments related to the substance of the Alaska case.[80] Because of this tendency to argue irrelevant points, the scope of the opposition to the Second Fee Award Motion the Sherers were allowed to file was specifically limited: "This response is

---

[76] Reply in Further Support of Motion and Proof of Costs and Attorneys' Fees, Pursuant to February 19, 2015, Order (DKT. NO 43), at 2, docket no. 47, filed Mar. 26, 2015.

[77] Order Granting Fees at 3–4.

[78] Order Granting Fees at 4.

[79] Order Denying Motion to Vacate at 8, 11–12.

[80] *Id.* at 14–16.

strictly limited to the reasonableness of the number of hours expended to oppose the Sherers'

motions, the reasonableness of the billing rate, and special circumstances that would reasonably

cause an adjustment to a presumptively reasonable fee award."[81]

(1)    Incorrectly arguing whether the fees should be granted

As they did with the initial fee award, the Sherers spend much of their brief on misplaced

arguments as to whether the court should award fees, again ignoring that the purpose of this

motion and briefing is to determine the reasonableness of the amount of the fees, not to readdress

the previously decided issue of whether to award fees. The Order Denying Motion to Vacate

Fees clearly treated Perkumpulan's request for attorneys' fees, noting that "The Sherers did not

oppose Perkumpulan's request for costs and attorneys' fees: they failed to reply to

Perkumpulan's Memorandum in Opposition re Motion to Disqualify Judge,[82] and their reply on

the Rule 60(b)(3) motion[83] again recites irrelevant substantive arguments in the Alaska case,

never addressing the request for fees."[84] Because the Sherers' motions caused Perkumpulan to

incur costs "as a result of removal" as required by § 1447(c) to merit a fee award, Perkumpulan's

request for another fee award was granted.[85]

The Sherers cite the U.S. Supreme Court decision of *Martin v. Franklin Capital Corp.*,[86]

with an incomplete sentence: "But just as there is no basis for supposing Congress meant to tilt

the exercise of discretion in favor of fee awards under § 1447(c) . . ."[87] However, the completion

---

[81] *Id.* at 18.

[82] Memorandum in Opposition re Motion to Disqualify Judge at 9, docket no. 33, filed May 5, 2014.

[83] Reply to Opposition to Motion to Vacate Order of Attorney Fees Issued by Judge David Nuffer Pursuant to Rule 60(b) on Grounds that Plaintiff's Counsel Committed Fraud Upon the Court, docket no. 35, filed May 12, 2014.

[84] Opposition to Motion to Vacate Fees at 15.

[85] *Id.* at 15–16, 18.

[86] 546 U.S. 132 (2005).

[87] Opposition to the Second Fee Award at 4 (citing *Martin*, 546 U.S. at 138).

of that sentence is important: "so too there is no basis here for a strong bias *against* fee awards. . . . We see nothing to persuade us that fees under § 1447(c) should either usually be granted or usually be denied."[88] Perkumpulan's request for attorney fees was granted and the next issue was reasonableness of the fee amount stated. The language the Sherers cite from *Martin* undercuts any argument that this decision is outside the discretion of the court.

The Sherers argue that the court has invited multiple improper fee awards:

> [T]he court invites Perkumpulan to seek attorney fees on attorney fees, doubling the risk to defendants for their harmless error, which error constituted objective reasonableness. The fact that this court remanded the Fairbanks case does not render the removal decision "unreasonable." The award of attorney fees does not enhance the fee aspects of the removal statute, but in fact, denatures it and is in opposition to the intent of Congress as determined by the Supreme Court in *Martin*, above."[89]

First, Perkumpulan, not the court, requested attorneys' fees, and did so pursuant to the remand statute. Second, the Sherers removal was not "harmless error," nor did it constitute "objective reasonableness." The removal has already been determined to be "clearly improper,"[90] and wholly lacking "an objectively reasonable basis."[91] Similarly, it is not the remand that renders the removal "unreasonable," but the "clearly improper"[92] nature of the removal itself. Finally, Sherers improperly read *Martin*.

The Sherers presumably continue to argue whether fees should be granted by citing the Ninth Circuit case of *Baddie v. Berkeley Farms*[93] which held that a fee award under § 1447(c)

---

[88] *Martin*, 546 U.S. at 138–39.

[89] Opposition to the Second Fee Award at 5.

[90] Order to Remand at 3.

[91] *Id.* at 6.

[92] *Id.* at 3.

[93] 64 F.3d 487 (9th Cir. 1995).

was unauthorized "when the initial removal was proper."[94] At another point in their opposition, the Sherers take the tenuous position of presupposing that had they removed the case to a federal court in Alaska, that court "in all probability would have transferred it to the court in Utah having original jurisdiction."[95] However, the Sherers' removal has already been determined to be "clearly improper,"[96] and wholly lacking "an objectively reasonable basis."[97] Furthermore, the Sherers make no effort to analyze *Baddie* or state a reason it should apply here, especially in this briefing concerning the Lodestar factors.

The Sherers' final argument that an award of attorney fees is improper, although made after the propriety of the award was determined, is that the fees incurred by Perkumpulan to oppose the Sherers' motions are not "incurred as a result of the removal," the triggering language of § 1447(c).[98] This argument was already discussed and rejected in the Order Denying Motion to Vacate Fees:

> Having already determined that an award of costs and fees was proper because the Sherers' removal was unreasonable,[99] § 1447(c) allows an award of costs and fees "incurred as a result of the removal." Fees were already granted for the initial costs of remanding the case. However, the Sherers have chosen to continually pursue arguments, largely of irrelevant substance, further delaying resolution, creating additional costs, and wasting judicial resources. Because the Sherers

---

[94] *Id.* at 490.

[95] Opposition to the Second Fee Award at 4.

[96] Order to Remand at 3.

[97] *Id.* at 6.

[98] Opposition to the Second Fee Award at 6.

[99] Order to Remand at 6–7:

> [T]he defendants lack an objectively reasonable basis for seeking removal. . . . [T]he Sherers removed an in rem action against mining claims in Alaska to the wrong court in a separate and far-off federal district. Jurisdiction in this court is clearly absent. Furthermore, even if all these important deficiencies were not present, all the defendants did not join in removal. The case has continued in the Alaska Court regardless of the Sherers' removal to this court, and the Sherers have actively participated in the Alaska proceedings by filing an Answer on April 8, 2013, during the pendency of the motions in this court. It is clear that the defendants lacked an objectively reasonable basis for seeking removal, and have since disregarded the proceedings in this court by participating in the Alaska Court.

make these motions, creating delay, cost, and waste, solely "as a result of
remand," another award of Perkumpulan's costs and fees is warranted.[100]

The prior discussion of this issue disposes of the Sherers' argument. The Sherers' post-remand

motions were specifically intended to reverse the decision of the court on remand. Therefore, it is

completely illogical to file motions related to a fee award granted on remand, only to

subsequently argue that those motions are entirely unrelated to the remand in question.

Perkumpulan would not have incurred their costs but for the Sherers' removal and continued

filings founded upon that removal. Therefore, this second fee award is just as much "incurred as

a result of remand" as the first.

(2)     Other irrelevant arguments

The Sherers began their brief by discussing the Private Securities Litigation Reform Act

of 1995,[101] arguing that Perkumpulan avoided paying "over several hundred thousand in attorney

fees" when a Seattle court dismissed their securities claims but erred in not awarding fees.[102]

However, now Perkumpulan's counsel "sanctimoniously . . . seek their pound of flesh from pro

se litigants for making a small, honest mistake."[103] Prior rulings of a Seattle court regarding fee

awards under the Private Securities Litigation Reform Act are irrelevant to a discussion of a fee

award based on improper removal under 28 U.S.C. § 1447(c). Furthermore, this fee award is not

related to "a small, honest mistake,"[104] but a procedural action that has already been determined

"clearly improper,"[105] and wholly lacking "an objectively reasonable basis."[106]

---

[100] Order Denying Motion to Vacate Fees at 15–16 (internal citations omitted).

[101] Opposition to the Second Fee Award at 1–3.

[102] *Id.* at 2.

[103] *Id.* at 2–3.

[104] *Id.* at 3.

[105] Order to Remand at 3.

[106] *Id.* at 6.

The Sherers next argue that Perkumpulan's counsel violated federal law by filing a civil RICO case in Seattle.[107] This argument does not relate to the Lodestar factors at issue with this fee award, nor does it relate to the removal that brought the parties to the district of Utah, nor does it relate to the Sherers' post-remand motions. Therefore, it carries no weight.

The Sherers next argue that the full faith and credit clause required Perkumpulan to challenge a separate case in Utah, not in Alaska.[108] The Sherers make no effort to state a reason this should matter here, but it is patently obvious that whatever their argument is, full faith and credit does not relate to any of the Lodestar factors to determine the amount of a fee award, the only question at issue here.

### III.    Conclusion on the Second Fee Award Motion

Perkumpulan's counsel billed a reasonable number of hours at reasonable rates, and there are no rare and special circumstances present that would suggest an adjustment of the amount Perkumpulan incurred as a result of the Sherers' improper removal. Perkumplan's claimed fee amount of $22,627.50 is proper.

### THE SHERER'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING THE MOTION TO VACATE THE AWARD OF ATTORNEYS' FEES

### I.    Standard

"The purpose [of a Rule 59(e)] motion is to correct manifest errors of law or to present newly discovered evidence."[109] The only grounds for amending or altering a judgment under Rule 59(e) are: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[110]

---

[107] Opposition to the Second Fee Award at 4.

[108] *Id.* at 5.

[109] *Webber v. Mefford*, 43 F.3d 1340, 1345 (10th Cir.1994) (citation omitted) (quotations omitted).

[110] *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quotations omitted).

## II.     There is no Basis to Amend the Order Denying the Motion
## to Vacate the Award of Attorneys' Fees

The Sherers move under Rule 59(e) to reconsider the Order Denying Motion to Vacate

Fees on three grounds: (a) that "the removal attempt, although a mistake of law, was based on a

need to correct or prevent manifest injustice, and was well reasoned;"[111] (b), that "this court was

unduly harsh in its award to plaintiff of attorney fees, and findings of fact by the court were

erroneous;"[112] and (c) that "newly discovered evidence  . . . should be considered."[113]

### A.  The removal was improper, regardless of intent

The Sherers' first basis for reconsideration under Rule 59(e) is that "the removal attempt,

although a mistake of law, was based on a need to correct or prevent manifest injustice, and was

well reasoned."[114] Presumably this falls within the category of "the need to correct clear error or

prevent manifest injustice."[115]

The Sherers seek to excuse their actions and alter the court's judgment based on their

intent as well as doctrines unrelated to remand and removal procedures. They argue that their

removal served a greater purpose in international law. "Perkumpulan attempts to seize ownership

of a patented mining property at Candle, Alaska" and "[t]his attempted seizure violates

international comity and a Hague Convention having the United States and Mexico as

signatories."[116] The Sherers spend pages of their motion discussing the Hague Convention,

international comity, and Full Faith and Credit, among other arguments.[117]

---

[111] Motion for Reconsideration at 2.

[112] *Id.*

[113] *Id.*

[114] *Id.*

[115] *Somerlott*, 686 F.3d at 1153.

[116] Motion for Reconsideration at 3.

[117] *Id.* at 3–9.

The Sherers fail to realize that none of these far-off topics give the District of Utah removal jurisdiction from state court in Alaska. Removal under § 1441 does not incorporate or otherwise defer to any sort of international policy in affording removal jurisdiction to federal district courts. Furthermore, contrary to Sherers' argument that the removal was "well-reasoned," the court ruled long ago that the Sherers' removal was "clearly improper,"[118] wholly lacking "an objectively reasonable basis,"[119] and granted attorneys' fees. The Sherers' efforts to muddy the waters with citations of international comity and characterizations of the removal that directly oppose prior rulings cannot create the necessary grounds to alter judgment for legal error.

## B.  The underlying awards of attorneys' fees are proper, not harsh

The Sherers next argue that "this court was unduly harsh in its award to plaintiff of attorney fees, and findings of fact by the court were erroneous."[120] The Sherers argue that "[t]he reasoning for defendant's attempted removal was neither frivolous nor brought in bad faith, but brought in consideration of the integrity of Utah's federal court system and federally signed treaties;"[121] that they are "whistleblowers who are being punished for their good faith actions;"[122] that they cannot pay the judgments against them;[123] and the court relied on facts that are false.[124] They then return to the long-settled issue of the court's discretion in arguing that the grant of fees is not mandatory and should not occur in this case. The Sherers once again argue outside of the scope of the question at issue: the amount of attorneys' fees to be awarded.

---

[118] Order to Remand at 3.

[119] *Id.* at 6.

[120] Motion for Reconsideration at 2.

[121] *Id.* at 9.

[122] *Id.* at 9.

[123] *Id.* at 11–13.

[124] *Id.* at 10–11.

First, as noted above, the reasoning for the Sherers' removal is not at issue. To whatever extent the Sherers are whistleblowers, they are not being punished for their good faith actions. They could have capitulated immediately upon the filing of Perkumpulan's motion to remand, acknowledging their blatant error as they do now, avoiding the costly briefing that has taken place. Instead, they vigorously opposed remand and caused a great amount of attorneys' fees. They are not punished for any good faith actions; rather they are required to compensate Perkumpulan for the time and expense caused to oppose the blatant error. To any extent Sherers seek "to correct clear error or prevent manifest injustice"[125] under Rule 59(e), there is no injustice in the refusal to vacate the fee award.

The Sherers' financial hardships were sufficiently discussed and considered above in conjunction with their opposition to Perkumpulan's Second Fee Award Motion. To the extent it would apply to the Rule 59(e) analysis "to correct clear error or prevent manifest injustice,"[126] there is no manifest injustice or clear error that needs correction.

The Sherers' allegations that the court improperly relied on false facts were also sufficiently discussed and considered above in Section II(C)(2) as it relates to Dressel attorney Dwight Williams and the values of the Sherers' property in Alaska. Regardless of the complaints about the prior discussion of the Sherers' assets, the point remains that they have assets yet to be liquidated. Under a Rule 59(e) analysis, Sherers' arguments about the court's reference to Mr. Williams or the Sherers' landholdings in Alaska do not constitute newly discovered evidence or an injustice sufficient to justify altering judgment.

---

[125] *Somerlott*, 686 F.3d at 1153.

[126] *Id.*

### C. The Sherers' "newly discovered evidence" is irrelevant to the procedure of remand

The Sherers' "newly discovered evidence" focuses on the amounts owed to law firms in an underlying lawsuit, leasing of mining property in Alaska, further proceedings in the Alaskan state court, comments in affidavit about the trustworthiness of Mr. Williams, and the Utah State Bar suspension of Mr. Williams.[127] None of these facts pertain to the Order Denying Motion to Vacate Fees. The reasonableness of the removal and post-remand fee awards is unaffected by whether a law firm has been paid, land has been leased, or any other proceedings in Alaska. The reasoning has been shown to stand even if Mr. Williams's affidavit is totally disregarded. And furthermore, to whatever extent Mr. Williams should be discredited for having his license to practice law suspended, surely Donald Sherer's disbarment weighs at least as heavily on credibility. Therefore, there is no "newly discovered evidence" meriting alteration of judgment.

### III.    Conclusion on the Sherers' Motion for Reconsideration

To prevail under Rule 59(e) to reconsider the Order Denying Motion to Vacate Fees, the Sherers must have shown "an intervening change in the controlling law, new evidence previously unavailable, and the need to correct clear error or prevent manifest injustice."[128] They have failed. The removal was improper, regardless of intent; the underlying awards of attorneys' fees are proper, not harsh; the Sherers' "newly discovered evidence" is irrelevant to the procedure of remand; and there is not clear error or manifest injustice.

In addition, Perkumpulan could have continued to vigorously oppose the Sherers because their "moving for Rule 60(b) relief twice to object to the same underlying ruling is the epitome of frivolous conduct."[129] However, Perkumpulan has generously chosen not to continue to meet

---

[127] Motion for Reconsideration at 8–9.

[128] *Somerlott*, 686 F.3d at 1153.

[129] Memorandum in Opposition to Defendants' Rule 60(b) Motion and Request for Costs and Expenses, Including Attorneys' Fees at 2, docket no. 48, filed Mar. 26, 2015.

the Sherers' every grievance, thereby limiting the amount of attorneys' fees that could be incurred.[130] As Perkumpulan states: "[t]he Sherers simply recycle and recycle the same arguments. Enough is enough."[131] By not going to great lengths to oppose this latest motion but letting it fail on its own weakness, thereby not incurring costs for a third fee award, Perkumpulan has offered an end to the fees incurred by the Sherers. This allows the Sherers' to mitigate their expenses by refraining from causing any further legal costs incurred as a result of removal.

## ORDER

For the reasons state above, the court ORDERS as follows:

1.      Perkumpulan's motion[132] is GRANTED;

2.      Perkumpulan is awarded $22,627.50 in addition to the previous award of $31,156.00; and

3.      The Sherers' motion for reconsideration[133] is DENIED.

Signed this 12th day of May, 2015.

BY THE COURT:

David Nuffer
United States District Judge

---

[130] *Id.*

[131] *Id.*

[132] Motion and Proof of Costs and Attorneys' Fees, Pursuant to February 19, 2015 Order (DKT. NO 43), docket no. 44, filed Mar. 5, 2015.

[133] Motion for Reconsideration of Rule 60, docket no. 46, filed Mar. 12, 2015.